W. R. JAMISON v. ROBERT C. RAY and Others.

July 2, 1898.

Nos. 11,185—(161).

**Mechanic's Lien—Finding of Payment Sustained by Evidence.**
Evidence *held* to sustain the findings of fact of the trial court, to the effect that certain labor claims, for which the plaintiff sought to establish a lien, were paid.

Appeal by plaintiff from an order of the district court for St. Louis county, Moer, J., denying plaintiff's motion for a new trial after findings and an order for judgment in favor of defendants. Affirmed.

*H. B. Fryberger,* for appellant.

*Wilson & Wray* and *Billson, Congdon & Dickinson,* for respondents.

START, C. J.

The plaintiff brought this action to foreclose an alleged lien on the lots described in the complaint, for work performed by certain parties in the erection of a building thereon whose claims and liens for such work, he alleged, had been duly assigned to him. The trial court found that the labor was performed as alleged, but that each and all of the persons performing it were paid therefor in full before the assignment under which the plaintiff claimed was made, and, as a conclusion of law, that the plaintiff was not entitled to any relief. He appealed from an order denying his motion for a new trial.

The only question on this appeal is whether the finding that the labor claims in question were so paid is sustained by the evidence.

On September 25, 1896, the owners of the lots executed a lease thereof for five years to the defendant Worth W. Preston, who went into possession of the lots, and commenced the construction of a building thereon for a skating rink. He carried on the work in the name of the Union Rink Company, of which he was general man-

ager, and the lease was assigned to it after the work in question had been performed. The superintendent of the construction of the building was a Mr. McKay. Preston was at this time also the general manager of a corporation known as the Paddack Manufacturing Company, and there was evidence in the case tending to show that he carried the bank account of the Union Rink Company in the name of the Paddack Manufacturing Company. Time checks, or drafts were made out for the laborers by the superintendent, all in form and substance, except names, dates, and amounts, as the one herein set forth, viz.:

"This order is due and payable on the Saturday following its date of issue.

No. ——.                              Duluth, Minn., Dec. 5, 1896.
                Union Rink Company:
Please pay to M. Medby, or order, the sum of nine $^{95}/_{100}$ dollars,. for 5 $^1/_7$ days' work, at $1.75 per day, as carpenter.
                                        M. M. McKay,
                                        Superintendent.
                            ..............Account."
Indorsed on the back:
"M. Medby."

These checks were taken by the superintendent, McKay, to Manager Preston, who made out bank checks to correspond with the time checks, all in form and substance, except names, dates, and. amounts, as the following:

"No. 234.                            Duluth, Minn., 12—5, 1896.
                National Bank of Commerce:
Pay to the order of M. Medby nine & $^{95}/_{100}$ dollars ($9.95).
                                        Paddack Mnfg. Co.,
                                per Worth W. Preston, Mgr."
Above check indorsed on back:
"M. Medby."

The superintendent then on Saturday, December 5, 1896, took the bank checks and delivered them to the laborers, respectively,. upon their indorsing the time checks, which were returned to Preston. On the following Monday, Preston gave to the superintendent a written assignment of the claims and liens of the men for their work to the Paddack Manufacturing Company, with directions to get the men to sign it. This was done, and on the next day the

Paddack Manufacturing Company, by Worth W. Preston, manager, assigned the claims and liens to the plaintiff.

There was evidence in the case tending to show that, at or about the time the time checks were made out, Preston told the superintendent that the Union Rink Company had no money, but the Paddack Manufacturing Company would take them up. The evidence also tended to show that these payments were made, in the same manner as previous payments to the men had been made, with the checks of the Paddack Manufacturing Company; that nothing was said to the men, when they were given the checks, that they were not in payment of their claims; and that the object in having them indorse the time checks was to furnish evidence that they had received the bank checks.

The plaintiff claims that the time checks were negotiable instruments; that they were indorsed by the laborers to the Paddack Manufacturing Company in blank, and by it turned over to the plaintiff; and that this was prima facie evidence of plaintiff's ownership of the claims. It is unnecessary to determine whether these time checks were negotiable paper, for the whole question whether these claims were paid, or assigned to the Paddack Manufacturing Company, was one of fact; and, upon the whole evidence, we are of the opinion that, conceding the time checks to be negotiable, it sustains the finding of the trial court that the claims were paid.

The plaintiff further urges that, even if the laborers' claims were in fact paid, the Paddack Manufacturing Company was subrogated to their liens, because it furnished the money to pay them. We need not discuss this question, because there is no finding, nor request to find, that these claims were paid with its money. The evidence on this question is far from conclusive. It is not an undisputed fact that the Paddack Manufacturing Company did furnish the money to pay the men.

The findings of fact by the trial court are sustained by the evidence, and they support its conclusions of law.

Order affirmed.